UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH L. MILLER, as Trustee
of the Kyung Ae Bae Trust under
Trust Agreement date October 16, 1989
between Kyung Ae Bae as Settlor and
Kyung Bae as Trustee, and KYUNG AE BAE,
as Trustee of the Kyung Ae Bae Trust
under Trust Agreement date October 16, 1989
between Kyung Ae Bae as Settlor
and Kyung Bae as Trustee,

        Plaintiffs,

v.

        Case No. 09-CV-15046

        HON. GEORGE CARAM STEEH

MSX-IBS HOLDING, INC.,
a Delaware corporation, and
MSX INTERNATIONAL, INC.,
a Delaware corporation.,

        Defendants.
_____/

### OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Ralph Miller and Kyung Ae Bae, in their capacity as the trustees of the Kyung Ae Bae Trust (the "Trust"), filed this suit to compel defendants MSX International, Inc. ("International") and/or MSX-IBS Holding, Inc. ("IBS") to redeem the IBS Series A preferred stock owned by the Trust. On November 30, 2011, the parties filed cross-motions for summary judgment. Responses to the motions were filed on January 9, 2012 and replies were filed on January 20, 2012. Oral argument occurred at a hearing on this motion on February 6, 2012. For the reasons that follow, the court GRANTS defendants' motion for summary judgment and DENIES plaintiffs' motion for summary judgment.

BACKGROUND

IBS is a Delaware corporation that is a holding company. IBS has no operations of its own and its only asset is the stock of its wholly-owned subsidiary, International. International went through a corporate restructuring in March 2007. Pursuant to that restructuring, International became a subsidiary of IBS. International is a provider of outsourced integrated business solutions focused primarily on warranty management, dealer process improvement, and human capital solutions to automobile and truck OEMs, dealers, suppliers, and ancillary service providers.

Miller was an executive employee of International when it was formed in 1997. His employment was terminated in 1999. Miller obtained common and preferred stock of International during his employment and he transferred his stock in International to the Trust. As a result of the restructuring, the Trust now holds common and preferred stock in IBS, but none in International.

This is the third lawsuit filed by plaintiffs relating to the Trust's stock. The first lawsuit was filed in 2001, before the restructuring and when the Trust held stock in International. Plaintiffs sued several defendants, including International, in Oakland County Circuit Court. Defendants frame the action as one seeking to force the purchase of all International stock owned by the Trust. Plaintiffs frame the action as one seeking a determination of which shares of Trust stock had vested when Miller's employment at International was terminated and which shares International had the right to redeem at that time. The case was settled. Pursuant to the settlement agreement, a designee of one of the defendants bought three-fifths of the International common stock owned by the Trust and the Trust retained ownership of two-fifths of its common stock and all of its preferred stock. The settlement

agreement also provides that the defendants would not change International's certificate of incorporation "to decrease the dividend rate, reduce or diminish the accrual, payment terms, or stated value, or extend the date of redemption" set forth in the certificate with respect to the Trust's preferred stock without the consent of the Trust.

In 2007, International restructured. It had approximately $250 million in debt that was to become due in 2007 and 2008. Had the debt not been refinanced, International was facing possible bankruptcy. In order for International to refinance the debt, the lenders required that International move some of the debt and all of the preferred stock to a holding company.

In order to accomplish the restructuring, International and IBS entered into a merger agreement. Before the restructuring, IBS was a wholly-owned subsidiary of International. After the restructuring, International was a wholly-owned subsidiary of IBS. The merger agreement also provided that the stock of International would be cancelled and converted into new stock of IBS with identical rights to the stock previously issued by International. All stockholders of International became stockholders of IBS, with the stock of IBS having identical rights to the stock of International prior to the merger. Prior to this restructuring, International amended its certificate of incorporation to push back the redemption date for all preferred stock other than that held by the Trust to May 1, 2027. The amendment provided that "nothing herein shall impair the rights of the parties to that certain Settlement Agreement dated August 16, 2002 to the extent they have such rights and remain holders of the Preferred Stock." The same provision regarding no rights under the settlement agreement being impaired is included in the certificate of incorporation for IBS. Thus, with respect to the preferred stock held by the Trust, the redemption date remained December

31, 2008, subject to the requirement that funds be legally available for the redemption.

After the restructuring, plaintiffs again sued International and other parties to the settlement agreement in Oakland County Circuit Court, alleging that the settlement agreement had been breached as a result of the restructuring. The court granted summary disposition to the defendants, and the Michigan Court of Appeals affirmed. The Court of Appeals held that "defendants did not 'decrease the dividend rate, reduce or diminish the accrual, payment terms, or stated value, or extend the date of redemption set forth in...the Certificate with respect to the Trust's Series A preferred stock' when it replaced the stock with MSX-IBS preferred stock." Miller v. MSX International, Inc., 2009 WL 2382632, *2 (Mich. App. Aug. 4, 2009). The court concluded "that plaintiffs, as they did before, had the option to redeem their stock, 'to the extent that funds are legally available,' any time after December 31, 2008, and thus, plaintiffs' redemption rights were not affected when [International] amended its certificate of incorporation." Id.

On December 19, 2008, the IBS Board met via telephone to determine whether the Trust's shares could be redeemed on December 31, 2008. The Board was advised on the subject by legal counsel who laid out the requirements for being able to redeem stock. The Board first considered the consolidated balance sheet of IBS as of November 23, 2008. The balance sheet was for IBS and all of its direct and indirect subsidiaries. The consolidated balance sheet reflected total long term debt of approximately $263 million. This amount consisted of approximately $205 million of bond debt that is an obligation of International, with the balance of approximately $59 million relating to notes that are an obligation of IBS. Overall, the balance sheet showed a deficit of $214 million. The Board was advised by counsel that this did not meet the Delaware test for redemption. These

numbers did not include the preferred stock as a liability. If the preferred stock was counted as a liability, the deficit would have been $355 million.

The Board also considered an analysis prepared by Plante & Moran, PLLC that was an Appraisal of the Fair Market Value of the Preferred and Common Stock of MSX-IBS as of September 30, 2008. The appraisal was done in connection with the possible development of a management incentive plan and was based on the operating results of International. The appraisal valued the company at negative $34 million. (Ex. 9 to Defendants' Mot., p. 26.) The value does not include the debt of $59 million owed by IBS. Based on the information presented, including the consolidated financials and the Plante & Moran appraisal, and guided by the legal standard set forth by counsel, the Board concluded that funds to redeem the Trust's shares were not legally available. Miller was informed of the Board's conclusion that IBS could not redeem the Trust's preferred stock. Plaintiffs then filed this lawsuit.

On July 13, 2011, during the course of the pending litigation, the IBS Board (consisting of four different directors than the 2008 board), again looked at the financial condition of IBS to determine whether it could redeem the Trust's preferred stock. Guided by the standard explained to it by legal counsel, the Board considered: (i) the company's balance sheet, (ii) another analysis prepared by Plante & Moran, an Impairment Testing Procedures Pursuant to ASC Topic 350-20 as of September 30, 2010, (iii) a Letter of Intent from Dekra AG to purchase International dated March 20, 2009, and (iv) information regarding International's bonds.

As of July 2011, IBS's liabilities totaled $80 million, increasing because the interest on the notes owed by IBS is added to the principal and not paid until maturity. As in 2008,

the only asset of IBS was the International stock. Thus, without treating the preferred stock as a liability, the fair market value of the International stock would have to be greater than $80 million for IBS to have had a surplus and its capital not impaired.

The 2010 Plante & Moran report concluded that the estimated fair market value of International was approximately negative $9 million. The negative $9 million value does not take into account IBS's liabilities of approximately $80 million.

The Board also considered an acquisition offer made in 2009 by Dekra AG, a large, multi-national corporation that includes business units similar to International's businesses. Dekra offered to purchase all of the shares of International for $150-175 million, excluding the debt of $205 million. This indicated that an independent third party had concluded that the company was worth less than its debt.

The Board also considered reports from legal counsel regarding the International bonds. Two of the largest holders of the bonds valued the company at less than $10 million, and two other large bondholders did not think International had any net value. Either way, the indicated value of International, the only asset of IBS, was much less than the $80 million debt owed by IBS. Counsel also reported that trading prices on the bonds implied a valuation of International of approximately $175 million, again not enough to pay off the International debt, much less the IBS debt in addition.

The Board was also aware that International's $205 million debt matures on April 1, 2012. International has been seeking to refinance, restructure, or otherwise modify the terms of its obligation with respect to this debt because International does not have the ability to satisfy this obligation when it matures. The Board knew that as of July 13, 2011, the efforts had been unsuccessful. If the bonds cannot be refinanced, IBS and

International will have no choice but to file for bankruptcy. Based on the updated financial information and guidance from counsel, the Board concluded that funds were not legally available to redeem the Trust's preferred stock.

In their motion for summary judgment, defendants argue the undisputed facts show that the Board of Directors of IBS properly determined that the corporation has no surplus and, therefore, plaintiffs' preferred stock in the corporation cannot be redeemed under Delaware law. Defendants also argue that summary judgment should be granted to International as plaintiffs have asserted no valid claim against International. Defendants argue International cannot be held liable because: (1) the stock at issue is IBS stock; (2) the IBS Board of Directors made the decision regarding redemption; and (3) International cannot be held liable merely because it is a subsidiary of IBS. In their response, plaintiffs agree to the dismissal of International from this lawsuit but stress the separation of parent from subsidiary further supports their view that International's bond debt should not be considered as a liability of IBS. Based on plaintiffs' agreement, the court GRANTS defendants' motion for summary judgment as to International.

Plaintiffs, in their motion for summary judgment, argue IBS has funds legally available to redeem the Trust's Series A preferred stock because IBS's financial statements show that its assets exceed its liabilities by nearly $100 million (if the preferred stock is not treated as a liability). Plaintiffs argue the Board improperly relied on consolidated financial statements and valuations which included the debt of International, which plaintiffs argue IBS is not obligated to pay. Plaintiffs therefore argue the redemption of the Trust's preferred stock will not impair the capital of IBS and is therefore proper.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean

8


v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  Id.

ANALYSIS

A Delaware corporation cannot redeem stock "when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation."  8 Del. C. §160.  In SV Inv. Partners, LLC v. ThoughtWorks, Inc., --- A.3d ---, 2011 WL 5547123 (Del. Nov. 15, 2011), the Delaware Supreme Court considered this prohibition against any redemption that impairs a company's capital.  In that case, the parties had agreed to a right of redemption, subject to funds being legally available.  Following a demand for redemption, the defendant's board sought the advice of legal counsel and financial advisors and ultimately concluded that any further redemption would have impaired the company's capital.  The Delaware Chancery Court found that the board had acted reasonably and the Delaware Supreme Court affirmed.

"Capital is impaired 'if the funds used in the repurchase exceed the amount of the corporation's 'surplus,' defined by 8 Del. C. §154 to mean the excess of net assets over the par value of the corporation's issued stock.'"  Id. at *4, quoting Klang v. Smith's Food & Drug Ctrs., Inc., 702 A.2d 150, 153 (Del. 1997).  "Net assets means the amount by which total assets exceed total liabilities."  8 Del. C. §154.  The ThoughtWorks court found "[a]s provided by Section 160(a)(1), unless a corporation redeems shares and retires them to reduce its capital, 'a corporation may use only its surplus for the purchase of shares of its own capital stock.'"  2011 WL 5547123, *4, quoting In re Int'l Radiator Co., 92 A.255, 256

9

(Del. Ch. 1914). The court recognized the statutory purpose of protecting creditors and the long-term health of the corporation. Id. The court then found:

> When a board decides on the amount of surplus available to make redemptions, its decision is entitled to deference absent a showing that the board: (1) acted in bad faith, (2) relied on unreliable methods and data, or (3) made determinations so far off the mark as to constitute actual or constructive fraud.

Id. at *4. In Klang, the court utilized the same standard in finding "[i]n the absence of bad faith or fraud on the part of the board, courts will not 'substitute [our] concepts of wisdom for that of the directors.'" 702 A.2d at 156. The Klang court noted that Delaware law "does not require any particular method of calculating surplus, but simply prescribes factors that any such calculation must include." Id. at 155.

Defendants argue the IBS Board did exactly what it was supposed to do under these circumstances: obtain outside legal advice and evaluate financial information that reflected the fair value of the company's assets. The Board reviewed the company's balance sheets, as well as financial reports by an accounting firm and an acquisition offer from a company in the same industry. The Board was aware that the debt of its sole asset, its subsidiary International, would become due in April 2012, that neither International nor IBS has the means to pay the debt when it becomes due, and that, to date, the efforts to renegotiate the debt or refinance it have failed. Defendants thus argue the Board's decisions were reasonable.

Plaintiffs' arguments are based on the idea that International's financials should not be considered in determining whether IBS has funds available to redeem the shares. Plaintiffs argue the Board should have considered the stand-alone balance sheets of IBS, which show assets exceed liabilities. Plaintiffs argue these balance sheets are party

10

admissions. Plaintiffs also cite Minturn's testimony that IBS and International were solvent in May 2007. Plaintiffs note IBS's debts will not mature until May 4, 2013 and May 4, 2014 and that IBS has not guaranteed the debts of International and is not "legally obligated to pay the debts owed by any of its subsidiaries." Plaintiffs also cite Minturn's testimony that none of the IBS companies asked any creditor for permission to lend cash to IBS in order to redeem the Trust's preferred stock. As a result of this evidence, plaintiffs argue IBS has a substantial surplus and has more than sufficient funds to redeem the Trust's preferred stock.

However, in making their stand-alone balance sheet argument, plaintiffs ask this court to do exactly what the Delaware Supreme Court rejected in Klang. In Klang, the court, in reviewing a capital impairment claim, stated "plaintiff asks us to adopt an interpretation of 8 Del. C § 160 whereby balance-sheet net worth is controlling for purposes of determining compliance with the statute." 702 A.2d at 154. The court recognized that "the books of a corporation do not necessarily reflect the current values of its assets and liabilities" and that "[i]t is unrealistic to hold that a corporation is bound by its balance sheets for purposes of determining compliance with Section 160." Id.

Moreover, Minturn attests that the stand-alone balance sheet provides no reliable information about the actual value of IBS assets. As explained in Minturn's affidavit and during his deposition, the entry on the May 27, 2007 unaudited IBS balance sheet relied on by plaintiffs showing assets of $168 million is no reflection of the value of that asset, which is the International stock. Instead, it is simply the dollar amount of the obligations that IBS assumed in connection with the restructuring. It reflects the transfer of the preferred stock ($118 million), two loans ($50 million), and some stock warrants ($750,000)

from International to IBS when the restructuring took place. While that was a proper accounting treatment for the investment in International, the $168 million of assumed obligations had nothing to do with the value of the stock at the time or now. Plaintiffs fail to address this fatal problem with relying on the stand-alone balance sheet.

Plaintiffs admit that in order for a Delaware corporation to legally make a redemption, its net assets must exceed its total liabilities. The only asset of IBS is the stock of International. To determine the value of the asset, one must assess the value of the stock of International. See Morris v. Standard Gas & Elec. Co., 63 A.2d 577 (Del. Ch. 1949) (explaining that, to determine if the utility holding company had a surplus allowing the payment of dividends, the board properly assessed the value of the various stocks owned by the company). Defendants argue that to determine the value of the International stock, one must consider the amount of debt owed by International. The experts who performed valuations that were presented to and relied on by the Board, the company that submitted an offer to buy International excluding its debt, and the Board all recognized that the debt must be considered in evaluating the value of International.

As further support, defendants cite legal authority providing that consolidated financial statements can be more meaningful than a stand-alone financial statement. The Financial Accounting Standards Board's Accounting Standards Codification provides:

> The purpose of consolidated financial statements is to present, primarily for the benefit of the owners and creditors of the parent, the results of operations and the financial position of a parent and all its subsidiaries as if the consolidated group were a single economic entity. There is a presumption that consolidated financial statements are more meaningful than separate financial statements and that they are usually necessary for a fair presentation when one of the entities in the consolidated group directly or indirectly has a controlling financial interest in the other entities.

FASB ASC ¶ 810-10-1.  Plaintiffs fail to submit legal authority providing that the Board was required to consider only stand-alone balance sheets or was prohibited from considering consolidated financial information.

Plaintiffs also attempt to poke holes in the evidence submitted by defendants. Plaintiffs note that the Plante & Moran valuation was prepared in connection with a management incentive plan and was to be used "for no other purpose".  However, plaintiffs fail to explain how the valuation is unreliable or why it should not have been considered by the Board.  Plaintiffs simply argue it inappropriately considers International's financials. Plaintiffs state that the Dekra proposal and second Plante & Moran valuation, both presented at the July 13, 2011 board meeting, were not produced in discovery. Defendants represent that the Plante & Moran report was produced and provide the production number for the document.  The documents were referenced in the excerpt of the board meeting minutes produced and if plaintiffs needed additional time or discovery they could have requested it.

Plaintiffs also attempt to distinguish Klang and ThoughtWorks, arguing that in both of those cases the boards attempted to maximize the value of the company in order to comply with the corporation's redemption obligations to its shareholder.  Under the standard set forth in Klang and ThoughtWorks, plaintiffs have the burden of showing that the Board acted in bad faith, relied on unreliable methods and data, or made determinations so far off the mark as to constitute actual or constructive fraud.  Plaintiffs have failed to do so.  Plaintiffs argue the Board improperly relied on consolidated financial information but provide no legal authority for the argument that it was improper for the Board to consider such information.  As IBS's sole asset is its stock in International, the

value of International appears key to the analysis. Plaintiffs also argue the Board's decisions are not entitled to deference because the Board did not engage in "deliberative" analysis. Plaintiffs provide no legal authority regarding the type of analysis necessary for a Board's actions to constitute "deliberative" analysis. Moreover, the minutes from the board meetings suggest complete consideration of the factors required by law. Plaintiffs also provide no factual support for their argument that IBS has the surplus required to redeem the Trust's preferred stock, aside from stand-alone balance sheets proven defective by Minturn's testimony. The court therefore concludes that there is no genuine issue of fact that, in performing its duties under Delaware law, the Board did not act in bad faith, rely on unreliable methods or data, or engage in actual or constructive fraud in determining there was no surplus available to redeem the Trust's preferred stock. The evidence has shown that the Board's decisions were reasonable. Summary judgment for defendants is therefore appropriate.[1]

CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED.

Dated: February 13, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

[1] As summary judgment for defendants is appropriate, the court need not consider the additional evidence (expert reports) and arguments (failure to meet "available cash" and "ability to pay its debts as they become due" requirements of Thoughtworks) submitted by defendants.

14

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 13, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk